NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ANTHONY D. MARES,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-1627

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 18-3159, Judge Joseph L. Toth.

---

Decided: May 10, 2021

---

SEAN A. RAVIN, Miami, FL, for claimant-appellant.

NATHANAEL YALE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also represented by JEFFREY B. CLARK, MARTIN F. HOCKEY, JR., ROBERT EDWARD KIRSCHMAN, JR.; EVAN SCOTT GRANT, BRIAN D. GRIFFIN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before DYK, LINN, and O'MALLEY, *Circuit Judges*.

PER CURIAM.

Appellant Anthony D. Mares ("Mares") appeals a decision of the U.S. Court of Appeals for Veterans Claims ("Veterans Court"), affirming a decision of the Board of Veterans' Appeals ("Board"), which denied his claim for entitlement to service connection for diabetes mellitus and erectile dysfunction. *Mares v. Wilkie*, No. 18-3159, 2019 WL 6885044 (Vet. App. Dec. 18, 2019). We *dismiss* for lack of jurisdiction.

## I. BACKGROUND

### A. Legal Framework

"During the Vietnam War, herbicides were applied near the Korean DMZ [Demilitarized Zone] from April 1968 to July 1969." *McKinney v. McDonald*, 796 F.3d 1377, 1379 (Fed. Cir. 2015). Congress, by statute, and the Department of Veterans Affairs ("VA"), by regulation, have created a number of presumptions with respect to veterans' exposure to herbicides and certain diseases or conditions associated with that exposure.

Relevant to this appeal, there is a presumption of exposure to herbicides during service for veterans who "served between April 1, 1968, and August 31, 1971, in a unit that, as determined by the Department of Defense, operated in or near the Korean DMZ in an area in which herbicides are known to have been applied during that period." 39 U.S.C. § 3.307(a)(6)(iv). Although herbicide use near the Korean DMZ ended in 1969, the VA extended the covered period of the regulation through August 1971 to account for residual exposure. *See* Herbicide Exposure and Veterans With Covered Service in Korea, 76 Fed. Reg. 4,245, 4,245 (Jan. 25, 2011) ("We believe it is reasonable and consistent with the intent of Congress to concede exposure for veterans who served in or near the Korean DMZ

after herbicide application ceased, because of the potential for exposure to residuals of herbicides applied in that area.").[1]

A veteran who meets the requirements of § 3.307(a)(6)(iv) is presumed to have been exposed to herbicides during service, and may obtain service connection on a presumptive basis for any disease found to be associated with such exposure. *See* 38 C.F.R. § 3.309(e). A veteran who does not qualify for the presumption may still pursue direct service connection for the same disability. *See Combee v. Brown*, 34 F.3d 1039, 1043–44 (Fed. Cir. 1994). To prove direct service connection, as opposed to presumptive service connection, a veteran must show: "'(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service'—the so-called 'nexus' requirement." *Holton v. Shinseki*, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting *Shedden v. Principi*, 381 F.3d 1163, 1167 (Fed. Cir. 2004)).

## B. Factual Background

Mares served in the United States Army from 1962 to 1982. His service included two tours on the Korean Peninsula: (1) from September 18, 1964 to August 17, 1965; and (2) from May 14, 1972 to June 12, 1973. *Mares*, 2019 WL

---

[1]    The Blue Water Navy Vietnam Veterans Act of 2019 subsequently codified this regulatory presumption for veterans who "served in or near the Korean [DMZ] during the period beginning on September 1, 1967, and ending on August 31, 1971." 38 U.S.C. § 1116B. This provision went into effect January 1, 2020—after the Veterans Court issued its decision in this appeal. As the court noted, however, "the period specified still does not cover the veteran's service." *Mares*, 2019 WL 6885044, at *1 n.1.

6885044, at \*1.  Accordingly, he did not serve in the DMZ during the time period specified in 39 C.F.R. § 3.307(a)(6)(iv).

In 2011, Mares filed a claim seeking service connection for diabetes mellitus—a herbicide-associated disease—and erectile dysfunction as secondary to his diabetes mellitus. In his claim, Mares stated that, during his second period of service in Korea (between 1972 and 1973), he was a facility engineer "responsible for a variety of construction projects north of the Imjin River, both within the DMZ and directly south of the DMZ fence." *Mares*, 2019 WL 6885044, at \*1. He stated that he "was in the area that had been defoliated constantly." *Id*.  In a subsequent submission, Mares stated that he had been informed by a veteran's service organization representative that he "may have been exposed to defoliant chemicals in Korea and especially in the area of the DMZ." *Id*.

A VA examiner confirmed Mares' diagnosis of diabetes mellitus, but did not opine on a link between the disease and alleged herbicide exposure.  In an April 2012 memorandum, the VA regional office coordinator with the Joint Services Records Research Center determined that Mares' "assignments to Korea preceded and followed the dates when Agent Orange is conceded to have been used at the Korean DMZ." *Id*. at \*2.

In August 2012, the VA regional office denied Mares' diabetes mellitus and erectile dysfunction claims.  Mares timely appealed that decision to the Board.

In May 2019, the Board denied Mares' claims for service connection for diabetes and erectile dysfunction.  The Board recognized that VA regulations presume exposure to herbicide agents for veterans who served between April 1, 1968 and August 31, 1971, in a unit that operated in or near the Korean DMZ where herbicides are known to have been applied.  J.A. 19.  The Board found that, because Mares' service department records indicate that he was not

in Korea during that time frame, "the legal presumption of exposure to herbicide agents is not available." *Id*. The Board further found that Mares "did not submit any evidence stating how he was allegedly exposed to herbicide agents and the record otherwise contains no basis upon which to find exposure to herbicide agents on an actual basis." *Id*. Because there was no showing of actual or presumed exposure to herbicides, the Board denied service connection for diabetes mellitus on a presumptive basis. *Id*.

The Board then considered whether Mares had established direct service connection for diabetes mellitus. Because the record contained no indication that Mares' "post-service diabetes is causally related to his active service or any incident therein," and "absent probative evidence of in-service Agent Orange exposure," the Board denied service connection on a direct basis. J.A. 20. Given its denial of the diabetes claim, the Board also denied Mares' secondary erectile dysfunction claim. *Id*. Mares appealed to the Veterans Court.

In the December 18, 2019 decision at issue on appeal, the Veterans Court affirmed the Board's decision denying service connection. Before the Veterans Court, Mares did not challenge the Board's finding that the regulatory presumption of herbicide exposure was inapplicable to his claim because his service fell outside the specified presumptive period. *Mares*, 2019 WL 6885044, at *3. Instead, Mares argued that the Board erred in finding "no evidence of alleged exposure to herbicide agents." *Id*. at *2. Specifically, he argued that the Board failed to analyze his statements that he was actually exposed to Agent Orange in the course of carrying out his construction duties in the Korean DMZ. *Id*. The Veterans Court disagreed. First, it pointed to the Board's finding that neither Mares "nor the record more generally, provided a 'basis upon which to find exposure to herbicide agents on an actual basis.'" *Id*. at *3. The court agreed with this assessment, finding that "nowhere

in the record does the veteran allege that herbicides were actually sprayed or deployed while he was serving in Korea, or that he had knowledge of otherwise coming into direct contact with them." *Id.*

Next, the Veterans Court found that the herbicide exposure Mares asserts "is residual in nature" because herbicide usage in the Korean DMZ ceased in 1969—almost three years before his second period of Korean service began in 1972. *Id.* The court found that this assertion "runs headlong into the regulation" because the VA already considered the potential for exposure to residuals of herbicides applied in the Korean DMZ when it defined the presumptive period. *Id.* at *3. Specifically, the VA extended the regulation's presumptive period end date to August 31, 1971 to account for residual exposure. *Id.* In other words, the VA "already determined that the period permitting a presumption of exposure to herbicide residuals ended in August 1971." *Id.* at *4. Given this framework, the Veterans Court found that Mares' lay statements were "no more than assertions that he was presumptively exposed to herbicide residuals when his second service period began in May 1972, eight and a half months after the 'reasonable outside date for residual exposure.'" *Id.* at *4.

The Veterans Court concluded that the Board offered a sufficient explanation for denying service connection for diabetes mellitus. *Id.* And, because Mares' argument for remand of the erectile dysfunction claim turned on the disposition of his diabetes appeal, the court affirmed that portion of the Board's decision as well. *Id.*

Mares timely appealed, alleging jurisdiction pursuant to 38 U.S.C. § 7292(a).

## II. DISCUSSION

This court's jurisdiction to review decisions of the Veterans Court is limited by statute. We have "exclusive jurisdiction to review and decide any challenge to the validity

of any statute or regulation or any interpretation thereof . . . and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). Absent a constitutional issue, however, we may not review the Veterans Court's factual findings or its application of law to facts. 38 U.S.C. § 7292(d); *see Bozeman v. McDonald*, 814 F.3d 1354, 1357 (Fed. Cir. 2016) (explaining that the Veterans Court's "application of law to fact" is "a question over which we lack jurisdiction").

On appeal, Mares contends that the Veterans Court erred when it held that he "was precluded from establishing entitlement to a benefit based on a theory of direct service connection for a disorder in which presumptive service connection is available." Appellant's Br. 10. Mares maintains that he never argued that his exposure should be presumed. Instead, Mares "claimed entitlement to service connection for diabetes mellitus based on actual exposure to Agent Orange as part of his construction duties in the Korean [DMZ]." *Id.* at 15. According to Mares, the Board was required "to analyze his lay statements to determine whether his allegation of actual exposure to Agent Orange was competent, credible, and persuasive," and it failed to do so. *Id.* at 17. We disagree with Mares' characterization of the Board's conclusions.

As the government points out, the crux of Mares' appeal involves a straight-forward challenge to a factual finding—whether Mares provided evidence of actual exposure to herbicides to demonstrate service connection. The Board found that he did not, and the Veterans Court found no error in that determination. J.A. 19 ("[T]he Board finds that service connection for diabetes mellitus based on actual or presumed exposure to herbicide agents is not warranted."); *Mares*, 2019 WL 6885044, at \*3 (agreeing with the Board that "nowhere in the record does the veteran allege that herbicides were actually sprayed or deployed while he was serving in Korea, or that he had knowledge of otherwise coming into direct contact with them"). The Board did not

conclude that Mares could not prove actual exposure due to the residual presence of herbicides.  It only concluded that the timing of Mares' service in the Korean DMZ and speculation that he may have been exposed to residual herbicides at that time were insufficient to do so.

On appeal, Mares argues, as he did before the Veterans Court, that his lay statements establish actual herbicide exposure.  But these allegations merely challenge the Board's findings of fact and the sufficiency of the evidence leading to the Board's decision, as well as the Veterans Court's review of that decision.  Those issues are not within our jurisdiction.  38 U.S.C. § 7292(d)(2).

Mares attempts to frame his argument as a legal one regarding the interpretation of 38 U.S.C. § 1154(a).  Specifically, he contends that the Veterans Court "misinterpreted section 1154(a) when it held that under 38 C.F.R. § 3.307(a)(6)(iv) . . . the Board is not obligated to consider entitlement under the theory of direct service connection because residual exposure is not actual exposure to Agent Orange." Appellant's Br. 3–4.  This argument lacks merit.

Contrary to Mares' assertion, the Veterans Court neither cited nor interpreted 38 U.S.C. § 1154(a).  *See Forshey v. Principi*, 284 F.3d 1335, 1349 (Fed. Cir. 2002) (en banc), *superseded on other grounds by statute*, Veterans Benefits Act of 2002, Pub. L. No. 107–330, § 402(a), 116 Stat. 2820, 2832 ("[A]n interpretation of a statute or regulation occurs when its meaning is elaborated by the court.").  It did not say that residual exposure is not "actual exposure." Rather, the Veterans Court affirmed the Board's finding that the evidence did not support Mares' claim of actual herbicide exposure, residual or otherwise.  Mares' arguments merely challenge the weight given to the evidence, which we lack jurisdiction to review.  *See Maxson v. Gober,* 230 F.3d 1330, 1333 (Fed. Cir. 2000) ("The weighing of this evidence is not within our appellate jurisdiction.").

### III. Conclusion

Because Mares' arguments on appeal concern only challenges to factual determinations, we lack jurisdiction. *See* 38 U.S.C. § 7292(d)(2). We therefore *dismiss* this appeal.

**DISMISSED**

Costs

No costs.