# United States Court of Appeals for the Federal Circuit

_____

**MYRNA HANSEN-SORENSEN,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

_____

2017-2418

_____

Appeal from the United States Court of Appeals for Veterans Claims in No. 15-2685, Senior Judge William A. Moorman.

_____

Decided: December 11, 2018

_____

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

NATHANAEL YALE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by ELIZABETH MARIE HOSFORD, ROBERT EDWARD KIRSCHMAN, JR., JOSEPH H. HUNT; BRIAN D. GRIFFIN, DEREK SCADDEN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before LOURIE, DYK, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Curtis L. Hansen served in the Army National Guard for six years, which included, at the start of the service in 1959, a period of 182 days of active duty for training. Mr. Hansen died from amyotrophic lateral sclerosis (ALS) in 1998. A decade later, in May 2009, his widow, appellant Myrna Hansen-Sorensen, applied to the Secretary of Veterans Affairs, the head of the Department of Veterans Affairs (VA), for benefits under 38 U.S.C. § 1310(a), which provides that "[w]hen any veteran dies after December 31, 1956, from a service-connected or compensable disability, the Secretary shall pay dependency and indemnity compensation to such veteran's surviving spouse, children, and parents." As this case comes to us, Mrs. Hansen-Sorensen sought to qualify based on the "service-connected" language and rested that effort entirely on a regulation adopted by the Secretary in 2008, which declares that, with exceptions not applicable here, "the development of [ALS] manifested at any time after discharge or release from active military, naval, or air service is sufficient to establish service connection for that disease." 38 C.F.R. § 3.318(a) (ALS Rule).

This appeal concerns whether Mr. Hansen's active duty for training constitutes "active military, naval, or air service"—a phrase that, as relevant here, limits the scope of the ALS Rule and of the term "veteran" as used in § 1310(a). *See* 38 U.S.C. § 101(2) ("The term 'veteran' means a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable."). The phrase at issue has a statutory definition. 38 U.S.C. § 101(24). The Court of Appeals for Veterans Claims, in agreement with the Board of Veterans' Appeals, held that

Mr. Hansen's "active duty for training" service does not qualify, and it denied the benefits claim on that basis. *Hansen-Sorensen v. Shulkin*, 2017 WL 2062313 (Vet. App. May 15, 2017). We have jurisdiction under 38 U.S.C. § 7292 to review the Veterans Court's legal ruling. We agree with the ruling, and we therefore affirm.

I

In 38 U.S.C. § 101(24), Congress set forth a definition of "active military, naval, or air service":

> The term "active military, naval, or air service" includes—
>
> (A) active duty;
>
> (B) any period of active duty for training during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in line of duty; and
>
> (C) any period of inactive duty during which the individual concerned was disabled or died—(i) from any injury incurred or aggravated in line of duty; or (ii) from an acute myocardial infarction, a cardiac arrest, or a cerebrovascular accident occurring during such training.

We held in *Bowers v. Shinseki* that the above provision's separate treatment of (A) and (B) means that "active duty for training" does not come within "active duty." *See* 748 F.3d 1351, 1353 (Fed. Cir. 2014). In adopting that statutory interpretation, we did not mention deference to the VA. Nor did we cite any authority on deference, whether regarding statutory interpretation, *e.g.*, *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), or regulatory interpretation, *e.g.*, *Auer v. Robbins*, 519 U.S. 452 (1997). Based on our interpretation of § 101(24), we held in *Bowers* that the ALS Rule did not apply to a man who had served in

the National Guard, and had a period of "active duty for training" but not "active duty," where his widow had not shown that her late husband's ALS was incurred or aggravated in the line of duty. 748 F.3d at 1351–53.

Under *Bowers*, for Mrs. Hansen-Sorensen to meet the "active military, naval, or air service" requirement of the ALS Rule, she had to show that Mr. Hansen, who had only active duty for training, "incurred or aggravated" his ALS "in line of duty" and "was disabled" "during" his period of active duty for training. 38 U.S.C. § 101(24)(B). In the absence of such a showing, the threshold requirement of the ALS Rule is not met, and no presumption of service connection arises under that rule. It is undisputed that Mrs. Hansen-Sorensen did not make the showing that Mr. Hansen incurred or aggravated ALS during his training or that he became disabled from ALS during that period. Therefore, unless *Bowers* has somehow been superseded, Mrs. Hansen-Sorensen's claim fails.

## II

Mrs. Hansen-Sorensen argues that *Bowers* has been superseded—specifically, that it no longer controls after the Secretary's post-*Bowers* adoption of two regulations. Like the Veterans Court, we are not persuaded. Neither of the two regulations modifies the ALS Rule or *Bowers*'s controlling interpretation of 38 U.S.C. § 101(24).

The first of the two post-*Bowers* regulations at issue was adopted in 2015 and appears in 38 C.F.R. § 3.307(a)(6)(v) (C-123 Rule). Earlier, the Secretary had provided, in a provision whose title referred (and still refers) to "presumptive service connection," that certain diseases associated with exposure to certain herbicide agents would be "considered to have been incurred in or aggravated by service" under specified circumstances. 38 C.F.R. §§ 3.307, 3.307(a), 3.307(a)(6) (2014). In 2015, the Secretary enlarged the class of covered individuals to include, under specified circumstances, reservists who

had worked with a specific model of airplane (C-123) that had been used to spray herbicides. *Id.* § 3.307(a)(6)(v). The Secretary explained that the addition enabled specified "individuals who were exposed to herbicides during reserve service to establish veteran status for VA purposes and eligibility for some VA benefits." Presumption of Herbicide Exposure and Presumption of Disability During Service for Reservists Presumed Exposed to Herbicide, 80 Fed. Reg. 35,246, 35,246 (June 19, 2015). Under the rule, the specified individuals are presumed to have been exposed to a herbicide agent; "[s]uch exposure constitutes an injury under 38 U.S.C. 101(24)(B) and (C)"; and if a described individual develops a specified disease, "it will be presumed that the individual concerned became disabled during that service for purposes of establishing that the individual served in the active military, naval, or air service." 38 C.F.R. § 3.307(a)(6)(v).

The second post-*Bowers* regulation invoked by Mrs. Hansen-Sorensen was adopted in 2017 and appears in 38 C.F.R. § 3.307(a)(7) (Camp Lejeune Rule). Much as the C-123 Rule addresses individuals connected in specified ways with certain aircraft used for herbicide spraying, the Camp Lejeune Rule addresses individuals who spent specified amounts of time at Marine Corps Base Camp Lejeune during the almost 35 years in which its water was contaminated. *See* Diseases Associated With Exposure to Contaminants in the Water Supply at Camp Lejeune, 82 Fed. Reg. 4173 (Jan. 13, 2017). Under the rule, "[a] veteran, or former reservist or member of the National Guard" who had the specified time at Camp Lejeune in the period "shall be presumed to have been exposed during such service to the [identified] contaminants," unless affirmative evidence establishes otherwise. *Id.* § 3.307(a)(7)(iii). In addition, "[e]xposure described in paragraph (a)(7)(iii) of this section is an injury under 38 U.S.C. 101(24)(B) and (C)"; and if such an individual develops a specified disease, "VA will presume that the

individual concerned became disabled during that service for purposes of establishing that the individual served in the active military, naval, or air service." *Id.* § 3.307(a)(7)(iv).

We conclude, contrary to Mrs. Hansen-Sorensen's contention, that the C-123 and Camp Lejeune rules do not alter the *Bowers* statutory interpretation of the phrase "active military, naval, or air service" or the application of that phrase in the ALS Rule. The two new rules do not change the language of the ALS Rule, which incorporates word for word that statutory phrase. Not surprisingly, given that this court interpreted the statutory phrase without deference, the two new rules also do not purport to alter what we held in *Bowers* about the meaning of that phrase in an ALS case: "active duty for training" is not "active duty," so for a person who had only the former and came down with ALS—like Mr. Hansen and Mr. Bowers— to qualify under the ALS Rule, there must be a showing that the ALS was "incurred or aggravated" in the line of duty and that the person became disabled from that disease during the training period.

As relevant here, all that the two new rules do is establish that the "incurred or aggravated in line of duty" and "during which the individual concerned was disabled" requirements of § 101(24)(B) and (C) are met in specified circumstances. Those circumstances involve individuals who come down with specified diseases and had specified experiences (with C-123 aircraft or at Camp Lejeune) presenting risks of harm from specified chemical agents (herbicides or water contaminants). The Secretary made empirical judgments about those circumstances. *See* 80 Fed. Reg. at 35,246–47 (discussing 2014 National Academy of Sciences Institute of Medicine study of scientific literature and knowledge regarding "residual exposure to Agent Orange from service on aircraft formerly used during Operation Ranch Hand in Vietnam"); 82 Fed. Reg. at 4174–83 (discussing a variety of studies of effects of

contaminants at Camp Lejeune). Based on those judgments, the Secretary, exercising general authority under 38 U.S.C. § 501(a), codified a legal shortcut in each situation for meeting, not altering or circumventing, the standard of § 101(24)(B) and (C) for coming within the "active military, naval, or air service" language—as the two new rules, quoted in part above, make clear on their face.

It is undisputed that this case does not come within the circumstances covered by the C-123 or Camp Lejeune Rules. For the situation covered by the ALS Rule, at issue here, the Secretary has not made the same kind of empirical judgment or adopted the same kind of shortcut to making the showings required by § 101(24)(B) for a person with "active duty for training" but not "active duty." Thus, the two post-*Bowers* rules do not involve a new legal interpretation, or a factual or policy determination, that applies to this case and removes it from the controlling force of *Bowers*.

Although Mrs. Hansen-Sorensen has framed her challenge as one based on an altered legal interpretation, she has also suggested that the Secretary's different regulatory treatment of the ALS situation, on one hand, from the C-123 and Camp Lejeune situations, on the other, is arbitrary and capricious. This court is authorized to set aside any regulation relied on by the Veterans Court that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7292(d)(1). In various contexts, courts have recognized that treating "like cases differently" can be arbitrary and capricious. *Kaiser Found. Hosps. v. Sebelius*, 708 F.3d 226, 233 (D.C. Cir. 2013); *see, e.g., Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1379–80 (Fed. Cir. 2001) (explaining that an agency must have a reasonable explanation for adopting two regulations that implement virtually identical statutory language differ-

ently); *NLRB v. General Stencils, Inc.*, 438 F.2d 894, 904–05 (2d Cir. 1971).

But Mrs. Hansen-Sorensen has not made a persuasive showing of arbitrariness on such grounds in this matter. In particular, she has not shown that the ALS situation is truly "like" the C-123 or Camp Lejeune situations. In the latter two situations, the Secretary, based on empirical studies, made a judgment about likely connections of specific diseases to specific experiences involving likely exposure to specific harm-causing chemicals (herbicides or water contaminants). The exposures underlying those two rules do not underlie the ALS Rule, which relies on different empirical studies that the Secretary did not treat as tying ALS to any specific harm-causing chemical agent, use of specific equipment, or periods of time at a specific location. *See* Presumption of Service Connection for Amyotrophic Lateral Sclerosis, 74 Fed. Reg. 57,072, 57,072 (Nov. 4, 2009) (referring to 2006 report of the National Academy of Sciences Institute of Medicine).

We have not been presented a focused, detailed examination of the different empirical studies relevant to the different situations that are the subject of the several rules at issue. In this circumstance, we have no basis for concluding that the Secretary cannot reasonably distinguish the ALS situation from the C-123 and Camp Lejeune situations in making judgments about whether to declare categorically or to presume that specific diseases or injuries were "incurred or aggravated in line of duty," or that certain individuals became disabled during specified periods, under § 101(24)(B) and (C). In so concluding, we express no view on what a different agency or judicial record might reveal.

### III

For the foregoing reasons, we affirm the decision of the Veterans Court.

No costs.

**AFFIRMED**