# United States Court of Appeals for the Federal Circuit

---

**JOSEPH J. SNYDER,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-2168

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 19-3918, Judge William S. Greenberg.

---

Decided: June 9, 2021

---

JENNIFER ANN ZAJAC, Paralyzed Veterans of America, Washington, DC, argued for claimant-appellant. Also represented by LINDA E. BLAUHUT.

KYLE SHANE BECKRICH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by JEFFREY B. CLARK, ELIZABETH MARIE HOSFORD, ROBERT EDWARD KIRSCHMAN, JR.; BRIAN D. GRIFFIN, DEREK SCADDEN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before TARANTO, LINN, and CHEN, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Joseph Snyder served in the U.S. Army for less than 50 days in 1974—during the Vietnam era, a "period of war," 38 C.F.R. § 3.2(f)—his service ending with an honorable discharge when a knee injury rendered him unfit. Four decades later, he was diagnosed with Amyotrophic Lateral Sclerosis (ALS). He sought disability benefits for ALS from the Department of Veterans Affairs (VA) under 38 U.S.C. § 1110, which provides for compensation for service-connected disability—specifically, for "disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, air, or space service, during a period of war," subject to exceptions (for dishonorable discharge and willful misconduct or abuse of alcohol or drugs) inapplicable to Mr. Snyder. A decision of the U.S. Court of Appeals for Veterans Claims (Veterans Court) rejecting his claim for benefits based on ALS is before us.

In the Veterans Court, Mr. Snyder relied, to meet the fundamental requirement of service connection, solely on an argument about a VA regulation, adopted in 2008 and made final in 2009, that provides a presumption of service connection for veterans with ALS if specified preconditions are satisfied. 38 C.F.R. § 3.318(a), (b). Mr. Snyder undisputedly does not satisfy one of those preconditions—that the veteran "have active, continuous service of 90 days or more." *Id.* § 3.318(b)(3). Nevertheless, Mr. Snyder argued in the Veterans Court that the 90-day-service precondition is unlawful, because contrary to the statutory scheme and arbitrary and capricious, and that the presumption should remain in place with the precondition nullified, entitling him to a finding of service connection.

The Veterans Court rejected Mr. Snyder's contention that the 90-day-service precondition is unlawful. We have jurisdiction to review that legal conclusion. 38 U.S.C. § 7292(a). We decide the legal issue de novo. *Bazalo v. West*, 150 F.3d 1380, 1382 (Fed. Cir. 1998). We affirm.

I

Mr. Snyder challenges the validity of a portion of 38 C.F.R. § 3.318, which establishes a presumption of "service connection"—the term used for the requirement of § 1110 and the counterpart provision for peacetime service, 38 U.S.C. § 1131; *see Walker v. Shinseki*, 708 F.3d 1331, 1334 (Fed. Cir. 2013)—for veterans who develop ALS, under certain prescribed preconditions. Section 3.318 provides:

> (a) Except as provided in paragraph (b) of this section, the development of amyotrophic lateral sclerosis manifested at any time after discharge or release from active military, naval, or air service is sufficient to establish service connection for that disease.
>
> (b) Service connection will not be established under this section:
>
> > (1) If there is affirmative evidence that amyotrophic lateral sclerosis was not incurred during or aggravated by active military, naval, or air service;
> >
> > (2) If there is affirmative evidence that amyotrophic lateral sclerosis is due to the veteran's own willful misconduct; or
> >
> > (3) *If the veteran did not have active, continuous service of 90 days or more.*

38 C.F.R. § 3.318 (emphasis added).

This presumption is entirely a regulatory creation. Although Congress has enacted several provisions that

establish service-connection presumptions applicable in certain circumstances, *see*, *e.g.*, 38 U.S.C. §§ 1112, 1116–1118, Congress has created no statutory presumption applicable to ALS.  The Secretary promulgated § 3.318 pursuant to the general rulemaking authority granted by 38 U.S.C. § 501(a) to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department . . . , including . . . regulations with respect to the nature and extent of proof and evidence and the method of taking and furnishing them in order to establish the right to benefits under such laws." The law being carried out, the Secretary specified, was the requirement of "service connection" stated in 38 U.S.C. § 1110.  *See* Presumption of Service Connection for Amyotrophic Lateral Sclerosis, 73 Fed. Reg. 54,691, 54,692 (Sept. 23, 2008) (Interim Final Rule) (reciting § 501 authority applied to service-connection requirement of § 1110).

The Secretary's proposal and adoption of the regulation followed receipt of a VA-commissioned report by the National Academy of Sciences Institute of Medicine (IOM) that reviewed studies of the relationship of ALS to military service.  *See* Institute of Medicine, *Amyotrophic Lateral Sclerosis in Veterans: Review of the Scientific Literature* (Nov. 2006) (IOM Report); *see also* Interim Final Rule, 73 Fed. Reg. at 54,691.  The IOM Report notes that ALS is a neuromuscular disease that causes nerve cells in the brain and spinal cord to degenerate and, accordingly, is almost always fatal.  IOM Report at 1.  It also states that, although about 5–10% of ALS cases are inherited, the cause of the remaining cases is still unknown.  *Id.*  Nevertheless, the IOM Report states, the scientific literature indicated that there was "limited and suggestive evidence of an association between military service and later development of ALS." *Id.* at 3; *see also id.* at 35 (identical language in bold as final conclusion of the IOM Report).

Central to that conclusion in the IOM Report, *see id.* at 32–35, is a study by M.G. Weisskopf and colleagues

published not long before the IOM Report. The Weisskopf study compared the incidence of ALS-related deaths among those with military service and those without. M.G. Weisskopf et al., *Prospective Study of Military Service and Mortality from ALS*, 64 Neurology (1) 32 (2005) (Weisskopf). The Weisskopf study analyzed a population (previously assembled for unrelated purposes) of 408,288 individuals, of whom 281,874 had served in the military, including during World War I, World War II, the Korean War, or the Vietnam War.[1] *Id.* at 32. The study split those participants who had military service into equal "quintiles"—according to years of service—and calculated the median length of service, measured in whole-number years, for the participants in each quintile. *See id.* at 33 ("The total number of years of service was categorized by quintile. . . . For total years served, this was done by assigning medians to each quintile and modeling the median values as a continuous variable."); *id.* at 34 (table showing "Adjusted relative risk (RR) of ALS by years of military service, 1989–1998," rows for no military service and each of five quintiles, by "Median years").[2] Considering factors like age, smoking, and alcohol intake that might have affected rates of ALS, the Weisskopf study found that the relative risk of developing ALS was higher for those with military service than those without, that "[t]he increased risk of ALS was largely independent of the *number of years served* in the military," and that the increased risk was "largely independent of the branch of military service, the years when service occurred, *or the number of years served*." *Id.* at 34–35 (emphases added).

---

[1]    The study's results focused on participants' service in World War II, Korea, and Vietnam; only 592 people reported service during World War I. Weisskopf at 35.

[2]    The median years of service, from the first quintile to the fifth quintile, respectively, were: 2 years, 3 years, 4 years, 5 years, and 9 years. Weisskopf at 34.

The 2006 IOM Report observes that, while other studies had focused only on the Gulf War, the Weisskopf study was "the first to suggest a relationship between military service before the Gulf War and ALS mortality." IOM Report at 34. The report notes greater limitations of the other studies reviewed, *id.* at 26–31, 35, but as to the Weisskopf study, it states that "overall it was a well-designed and well-conducted study" and that, despite "limitations inherent in an analysis of a cohort assembled for other purposes, the findings are intriguing." *Id.* at 34. "The implication is that military service in general—not confined to exposures specific to the Gulf War—is related to the development of ALS." *Id.* The IOM Report adds: "The findings, if validated in other studies, suggest that exposures during military service, even among those with no wartime service, might be responsible." *Id.*

In accordance with the conclusions of the IOM Report and the Weisskopf study, the Secretary proposed an interim final rule—effective immediately but subject to notice and comment before adoption as a permanent rule—establishing a presumption of service connection for "any veteran who develops [ALS] at any time after separation from service." Interim Final Rule, 73 Fed. Reg. at 54,691. The Secretary noted the observed link between ALS and military service and also found that it was "unlikely that conclusive evidence [of the causes of ALS] will be developed in the foreseeable future." *Id.* Given the rapidly progressive and degenerative nature of the disease, as well as "continuing uncertainty regarding specific precipitating factors or events that lead to development of [ALS]," the Secretary determined that there would be "great difficulty" for veterans seeking benefits for ALS to prove service connection in the absence of the presumption. *Id.* at 54,692.

After explaining the basis for adopting a presumption at all, the Secretary enumerated three circumstances for which post-military-service ALS would not suffice to establish service connection. *See id.* First, service connection

would not be established "if there is affirmative evidence that ALS was *not* incurred during or aggravated by" the veteran's military service—which is what justifies the "presumption" label. *Id.* (emphasis added); *see also* 38 C.F.R. § 3.318(b)(1). Next, service connection would not be presumed if, consistent with the exception in § 1110 itself, there is "affirmative evidence that ALS was caused by the veteran's own willful misconduct." Interim Final Rule, 73 Fed. Reg. at 54,692; *see also* 38 C.F.R. § 3.318(b)(2). Finally, and relevant here, service connection would not be presumed "if the veteran did not have active, continuous service of 90 days or more." Interim Final Rule, 73 Fed. Reg. at 54,692; *see also* 38 C.F.R. § 3.318(b)(3).

As to the 90-day-service precondition, the Secretary reasoned:

> Although the Weisskopf study relied upon by the IOM report concluded that veterans have an increased risk of developing ALS compared to civilians regardless of years of service, a minimum-service requirement of 90 days would not be inconsistent with the study's findings because the study focused on veterans' "years" of service and did not consider minimum periods of service. We believe that 90 days is a reasonable period to ensure that an individual has had sufficient contact with activities in military service to encounter any hazards that may contribute to development of ALS.

Interim Final Rule, 73 Fed. Reg. at 54,692. The Secretary noted that 90-day-service requirements also apply to presumptions of service connection for chronic and tropical diseases, citing 38 U.S.C. § 1112(a) and 38 C.F.R. § 3.307(a)(1). *Id.* Thus, the Secretary concluded, "Congress considered 90 days to be the minimum period necessary to support an association between such service and subsequent development of disease" and "for any shorter

period, it is more likely than not that ALS was not associated with service." *Id.*

After receiving comments, the Secretary adopted the interim rule as a final rule, which was later adopted as § 3.318. *See* Presumption of Service Connection for Amyotrophic Lateral Sclerosis, 74 Fed. Reg. 57,072, 57,072 (Nov. 4, 2009) (Final Rule). The Secretary noted:

> The ALS Association expressed support for this regulation and stated its belief that 90 continuous days of service in the military and a diagnosis of ALS are sufficient to establish presumptive service connection for that disease. New § 3.318 generally establishes presumptive service connection for ALS if a veteran had at least 90 continuous days of active military, naval, or air service and developed ALS at any time after separation from such service. We made no changes based on this comment.

*Id.* at 57,073.

## II

Under the statute conferring jurisdiction on this court for this case, we must "hold unlawful and set aside" regulations that are (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (4) without observance of procedure required by law. 38 U.S.C. § 7292(d)(1). Mr. Snyder challenges the validity of § 3.318(b)(3)'s 90-day-service requirement, *first*, as exceeding the Secretary's statutory authority and, *second*, as arbitrary and capricious. Snyder Opening Br. at 16–29, 29–39. We must reject these challenges.

A

In promulgating 38 C.F.R. § 3.318, the Secretary invoked 38 U.S.C. § 501(a) as legal authority. We agree with the Secretary that § 501(a) supplies the required statutory authority for the regulation and that § 3.318, as an exercise of the § 501(a) authority to adopt conditional presumptions of facts required by 38 U.S.C. § 1110, is not contrary to other statutory provisions cited by Mr. Snyder.

Section 501(a) grants the Secretary the authority to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws," including "regulations with respect to the nature and extent of proof and evidence and the method of taking and furnishing them in order to establish the right to benefits under such laws." 38 U.S.C. § 501(a). Section 501(a) confers "broad" rulemaking authority. *Nat'l Org. of Veterans' Advocates, Inc. (NOVA) v. Sec'y of Veterans Affairs*, 669 F.3d 1340, 1345 (Fed. Cir. 2012). Such broad authority, defined in general terms, encompasses particular topics that are not themselves expressly mentioned as long as they come within the generally defined grant: "A regulation does not contradict the statutory scheme . . . simply because it addresses an issue on which the scheme is silent." *Lofton v. West*, 198 F.3d 846, 850 (Fed. Cir. 1999).

Relying on § 501(a)(1), the Secretary has issued regulations—like the one at issue here—establishing a service-connection presumption for certain conditions without a statutory scheme explicitly permitting such presumptions. *See* 38 C.F.R. § 3.307(a)(6)(iv) (establishing a service-connection presumption for veterans exposed to herbicide agents "in or near the Korean DMZ"); *id.* § 3.307(a)(6)(v) (same for veterans who "regularly and repeatedly operated, maintained, or served onboard C-123 aircraft" "during the Vietnam era"); *id.* § 3.307(a)(7) (same for diseases "associated with exposure to contaminants in the water supply at

Camp Lejeune"); *id.* § 3.316 (same for diseases associated with "specified vesicant agents"). These presumptions, if otherwise supported on their merits and duly promulgated, come within the Secretary's power to issue "regulations with respect to the nature and extent of proof and evidence" that will suffice "to establish the right to benefits" claimed. 38 U.S.C. § 501(a)(1). A presumption, while not itself "evidence," is a measure "with respect to" the evidence that is necessary or sufficient under an applicable statutory standard. A presumption "affords a party, for whose benefit the presumption runs, the luxury of *not having to produce specific evidence to establish the point at issue.* When the predicate evidence is established that triggers the presumption, *the further evidentiary gap is filled by the presumption.*" *Routen v. West,* 142 F.3d 1434, 1440 (Fed. Cir. 1998) (emphases added).

Here, the presumption of service connection for ALS created by § 3.318 goes to the "nature and extent" of the evidence that a veteran must provide to prove service connection. A veteran with ALS need not "produce specific evidence," *id.,* showing that the disability "result[ed] from personal injury suffered or disease contracted in line of duty" or showing the specified "aggravation" in service, 38 U.S.C. § 1110. Instead, if the preconditions are satisfied, the presumption supplies the required evidence.[3] Evidentiary rules like this one are within the Secretary's rulemaking authority under § 501(a)(1).

---

[3]    The Board of Veterans' Appeals determined that Mr. Snyder had not made a case-specific showing of service connection. J.A. 17. That is hardly surprising, given that the causes of ALS are unknown. In the Veterans Court, Mr. Snyder relied solely on the regulatory presumption together with his argument that the presumption must be modified to eliminate the 90-day-service precondition.

Mr. Snyder suggests that because § 3.318 distinguishes veterans who meet particular requirements from those who do not, the regulation is an unlawful modification of the statutory definition of "veteran" in 38 U.S.C. § 101(2). *See* Snyder Opening Br. at 23–27. That contention is meritless. Section 3.318 does not modify the definition of "veteran," and there is no dispute that Mr. Snyder meets the definition. *See* Secretary Response Br. at 20. Nothing in § 101(2) requires that all veterans be subject to the same regulatory evidentiary requirements, no matter their circumstances. Various regulations make evidentiary distinctions without express statutory authorization. *See, e.g.*, 38 C.F.R. § 3.307(a)(6)(iv) (presumption applies only to veterans who operated "in or near the Korean DMZ"); *id.* § 3.307(a)(6)(v) (presumption applies only to veterans who "regularly and repeatedly operated, maintained, or served onboard C-123 aircraft" "during the Vietnam era"); *id.* § 3.307(a)(7) (presumption applies only to veterans who served at Camp Lejeune).

Mr. Snyder also points to 38 U.S.C. § 5303A to support his argument that the Secretary exceeded his statutory authority. *See* Snyder Opening Br. at 22–24. But that provision, like § 101(2), is not inconsistent with regulations that make evidentiary requirements dependent on particular circumstances that not all veterans share. Section 5303A adds a general minimum-service requirement to the requirement of being a veteran for general-benefits eligibility, 38 U.S.C. § 5303A(b)(1), (2), but defines numerous exceptions to that added requirement, *id.* § 5303A(b)(3). The provision does not preclude the Secretary's regulatory relaxation of evidentiary requirements for service connection for veterans having particular physical disabilities and also meeting specified conditions.

We therefore reject Mr. Snyder's argument that § 3.318, with its 90-day-service requirement, exceeds the Secretary's statutory authority and contradicts certain statutory provisions. Mr. Snyder has not challenged the

procedural propriety of the promulgation of § 3.318. But he does argue that the rule, with its 90-day-service requirement, is arbitrary and capricious. Snyder Opening Br. at 29–39. We turn to that challenge.

B

Arguing that the 90-day-service requirement is "arbitrary and capricious," Mr. Snyder contends that (1) the Secretary did not offer a reasonable justification for comparing ALS to chronic and tropical diseases when imposing a 90-day-service requirement, *id.* at 31–37, and (2) the Weisskopf study found that military service was associated with an increased risk of ALS regardless of time served, *id.* at 37–39. Applying the deferential standard of review required for our assessment of this challenge, we must reject Mr. Snyder's argument.

Under 38 U.S.C. § 7292(d)(1), whose pertinent language is identical to that of the judicial-review provision of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), we must "set aside any regulation relied on by the Veterans Court that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,'" *Hansen-Sorenson v. Wilkie*, 909 F.3d 1379, 1384 (Fed. Cir. 2018) (quoting 38 U.S.C. § 7292(d)(1)). We follow the practice of treating the first two terms in the list as forming a single "arbitrary-and-capricious standard." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). That standard requires the agency's action to "be reasonable and reasonably explained." *Id.*

We have recognized that "treating like cases differently *can* be arbitrary and capricious," *Hansen-Sorenson*, 909 F.3d at 1384 (emphasis added and internal quotation marks omitted), but whether cases are "like" is a matter initially for the agency, and on that question, as on other factual and policy questions, distinctions need not be based on "conclusive proof," *Carpenter, Chartered v. Sec'y of Veterans Affairs*, 343 F.3d 1347, 1353 (Fed. Cir. 2003). Our

review of a regulation for compliance with the arbitrary-and-capricious standard is "deferential." *Prometheus Radio Project*, 141 S. Ct. at 1158. We may not "substitute [our] own policy judgment" for that of the Secretary. *Id.*; *see also McKinney v. McDonald*, 796 F.3d 1377, 1383 (Fed. Cir. 2015). In reviewing a challenge like Mr. Snyder's, "[a] court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Prometheus Radio Project*, 141 S. Ct. at 1158. Although "we may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). We conclude that § 3.318 passes muster under those standards.

The Secretary set forth most of his reasoning in announcing the Interim Final Rule. 73 Fed. Reg. at 54,691–92. The Secretary made clear that the question was what facts might justifiably support a presumption of the statutorily required element that a veteran's ALS is connected to "military service," *id.* at 54,691, *i.e.*, to "activities in military service," *id.* at 54,692—more specifically, what facts "support a presumption that the resulting disability was incurred in the line of duty during active military, naval, or air service," *id.* That focus on the needed connection to active military service reflects the statutory standard of 38 U.S.C. § 1110, which the Secretary cited. Interim Final Rule, 73 Fed. Reg. at 54,692.

The Secretary relied on the IOM report and particularly the IOM Report's description of the Weisskopf study as providing "'limited and suggestive evidence'" of an ALS association with military service, *id.* at 54,691, to conclude that "there is sufficient evidence indicating a correlation between ALS and activities in military service" to support

"a presumption of service connection" for veterans with ALS, *id.* at 54,691–92. The Secretary simultaneously concluded, however, that the justified presumption was conditional on a minimum period of service of 90 days. *Id.* at 54,692. "[W]e believe that, for any shorter period, it is more likely than not that ALS was not associated with service." *Id.*

The Secretary's rationale is easy to discern. First, the general logic is that the statutory requirement at issue is one of causal connection to activities in military service and, in the absence of evidence to the contrary, at some point near the de minimis end of the spectrum of service length, there is too little time in service for there to have been enough activities in service to make the causal connection likely. *See id.* (deeming it appropriate to adopt "a reasonable period to ensure that an individual has had sufficient contact with activities in military service to encounter any hazards that may contribute to development of ALS"). That logic is reasoned and reasonable.

Second, focusing on the record regarding ALS, the Secretary found no reliable evidence of a correlation between ALS and service of periods as short as 90 days. Specifically, the crucial Weisskopf "study focused on veterans' '*years*' of service and did not consider minimum periods of service." *Id.* (emphasis added). That reading of the Weisskopf study is supported by the study itself, which, as quoted above, makes clear that time measurements were in units of years, not any smaller units, and which supplies no evidence of a service-ALS correlation for veterans with service of periods substantially shorter than a year.

Third, the Secretary concluded that 90 days was "a reasonable period to ensure" a minimum degree of contact with hazards that may contribute to development of ALS. *Id.* Specifically, the Secretary observed that Congress had used a 90-day-service period for its presumption of service connection for chronic and tropical diseases. *Id.* (citing 38

U.S.C. § 1112(a) and its regulatory counterpart, 38 C.F.R. § 3.307(a)(1)). If, as we have concluded, it was reasonable for the Secretary to adopt some minimum period of service for that purpose, Mr. Snyder has not given us a basis for deeming it unreasonable for the Secretary to borrow the particular period Congress chose to achieve the same purpose for another substantial class of conditions. *See* 38 U.S.C. § 1101(3), (4) (listing numerous diseases that are "'chronic disease[s]'" or "'tropical disease[s]'").

Mr. Snyder contends that the Secretary should have compared ALS to other presumptions having *no* minimum service requirements. Snyder Opening Br. at 36–37. But the presumptions Mr. Snyder points to, both statutory and regulatory, involve "exposure to a substance or set of substances with known risks, either directly or through presence in a particular place, such as Vietnam," Secretary Response Br. at 39, or a type of circumstance (time as a prisoner of war) associated with specified medical conditions.[4] The ALS presumption does not: It is not known what causes ALS, either generally or within the range of activities that are part of military service. We have "no basis for concluding that the Secretary cannot reasonably distinguish the ALS situation" from situations that involve a "specific harm-causing chemical agent, use of specific equipment, or periods of time at a specific location." *Hansen-Sorenson*, 909 F.3d at 1384.

There was no evidence requiring the Secretary to make a different choice. Mr. Snyder has not pointed to such evidence in the rulemaking record but ignored by the Secretary. In fact, in adopting the Final Rule, the Secretary

---

[4]    These include service-connection presumptions for diseases associated with time spent as a prisoner of war (38 U.S.C. § 1112(b)); exposure to radiation (*id.* § 1112(c)), exposure to Agent Orange in Vietnam (*id.* § 1116), and service in the Persian Gulf War (*id.* § 1118).

noted that the ALS Association endorsed the 90-day-service requirement, and Mr. Snyder has not identified any contrary comments that went unmentioned by the Secretary. *Final Rule*, 74 Fed. Reg. at 57,073. Supportive comments "in the rulemaking record" can "buttress[]" a finding that an agency's regulation is reasonable. *Carpenter*, 343 F.3d at 1355–56. Mr. Snyder also has not pointed to evidence that was readily available to the Secretary but not obtained. *See CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1380 n.7 (Fed. Cir. 2016) (recognizing that "an agency's 'failure to adduce empirical data that can readily be obtained' can sometimes require setting aside an agency's decision" under the APA (citing *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 519 (2009))). Indeed, the Secretary expressly "welcome[d] comments on any relevant peer-reviewed literature concerning ALS that ha[d] been published since the November 2006 IOM report." *Interim Final Rule*, 73 Fed. Reg. at 54,692. And the Secretary was under "no general obligation . . . to conduct or commission [his] own empirical or statistical studies." *Prometheus Radio Project*, 141 S. Ct. at 1160.

In these circumstances, neither the evidence nor logic required the Secretary to limit his options to either ignoring length of service altogether or declining to adopt a presumption at all. The Secretary could reasonably choose a familiar short period to avoid what he reasonably found would be too demanding an evidentiary standard (no presumption) or too lenient a standard (no minimum service period) for applying the statutory requirement of service connection to veterans with ALS. We conclude that the Secretary "reasonably considered the relevant issues and reasonably explained the decision" and made a choice within the "zone of reasonableness." *Prometheus Radio Project*, 141 S. Ct. at 1158; *see also McKinney*, 796 F.3d at 1383–84 (upholding a regulation where the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action" (internal quotation marks

omitted)).  We therefore hold that the 90-day-service requirement of § 3.318(b)(3) is not arbitrary and capricious.

### III

For the foregoing reasons, the decision of the Veterans Court is affirmed.

The parties shall bear their own costs.

**AFFIRMED**