# United States Court of Appeals
# for the Federal Circuit

---

**MICHAEL L. MCKINNEY, THE NATIONAL
VETERANS LEGAL SERVICES PROGRAM, THE
MILITARY ORDER OF THE PURPLE HEART,
VIETNAM VETERANS OF AMERICA, THE
AMERICAN LEGION,**
*Petitioners*

**v.**

**ROBERT A. MCDONALD, SECRETARY OF
VETERANS AFFAIRS,**
*Respondent*

---

2014-7093

---

Petition for review pursuant to 38 U.S.C. § 502.

---

Decided: August 11, 2015

---

DANIELLE CHRISTINE DOREMUS, Paul Hastings LLP, San Francisco, CA, argued for petitioners. Also represented by STEPHEN BLAKE KINNAIRD, Washington, DC; PATRICK AARON BERKSHIRE, BARTON F. STICHMAN, National Veterans Legal Services Program, Washington, DC.

MARTIN F. HOCKEY, JR., Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also

represented by JOYCE R. BRANDA, ROBERT E. KIRSCHMAN, JR.; MARTIE ADELMAN, DAVID J. BARRANS, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before O'MALLEY and WALLACH, *Circuit Judges*, and GILSTRAP, *District Judge.*[*]

O'MALLEY, *Circuit Judge.*

Michael L. McKinney, National Veterans Legal Services Program, Military Order of the Purple Heart, Vietnam Veterans of America, and The American Legion (collectively, "Petitioners") petition this court under 38 U.S.C. § 502 to review the effective date that the Department of Veterans Affairs ("VA") assigned to 38 C.F.R. § 3.307(a)(6)(iv) ("the 2011 regulation"), a regulation that provides a presumption of herbicide exposure for certain veterans who served in or near the Korean demilitarized zone ("DMZ") during the Vietnam era. Petitioners challenge the VA's decision to make the regulation effective prospectively, rather than assigning a retroactive effective date. Petitioners also challenge the VA's denial of their petition for rulemaking to amend the effective date of the 2011 regulation. Because the VA's decision to assign the 2011 regulation a prospective effective date was not arbitrary, capricious, or contrary to law, we deny the petition for review.

_____

[*]    The Honorable Rodney Gilstrap, District Judge, United States District Court for the Eastern District of Texas, sitting by designation.

BACKGROUND

A. Veterans Benefits Act of 2003

During the Vietnam War, herbicides were applied near the Korean DMZ from April 1968 to July 1969. In 2003, Congress passed the Veterans Benefits Act, which authorized benefits for children with spina bifida born to certain Korean service veterans. Veterans Benefits Act of 2003, Pub. L. No. 108-183, 117 Stat. 2651 (2003) (codified at 38 U.S.C. § 1821). In relevant part, the Act defines "a veteran of covered service in Korea" as "any individual" who: (1) served "in or near" the Korean DMZ as determined by the Secretary of the VA, in consultation with the Department of Defense ("DoD"), between September 1, 1967 and August 31, 1971; and (2) is determined by the Secretary, in consultation with the DoD, "to have been exposed to a herbicide agent during such service in or near the Korean [DMZ]." 38 U.S.C. § 1821(c). Although Congress knew that herbicide use near the Korean DMZ ended in 1969, it extended the covered period through August 1971 to account for residual exposure. *See* 149 Cong. Rec. S15133-01 (daily ed. Nov. 19, 2003) ("[E]ven though herbicide use in or near the Korean DMZ ended in 1969, the Committees believe it is appropriate to extend the qualifying service period beyond 1969 to account for residual exposure.").

B. VBA Manual Rules

In 2003, the Veterans Benefits Administration amended its Adjudication Procedure Manual ("VBA Manual") to state that "[h]erbicide agents were used along the southern boundary of the [DMZ] in Korea between April 1968 and July 1969," and that the DoD "has identified specific units that were assigned or rotated to areas along the DMZ where herbicides were used." Historical VBA Manual M21-1, part VI, ch. 7, para. 7.20.b.2. The VBA Manual indicated that herbicide exposure would be conceded for veterans who served in the units DoD identi-

fied between April 1968 and July 1969 ("the 2003 manual rule"). *Id.*

On November 1, 2004, VBA revised the VBA Manual to implement the provisions of the Veterans Benefits Act of 2003 providing benefits for "individuals born with spina bifida who are the children of veterans who served with specific units in or near the DMZ in Korea between September 1, 1967 and August 31, 1971." VBA Manual Rewrite M21-1MR, part VI, ch. 2, § B (Nov. 1, 2004); Joint Appendix (J.A.) 69. Like the 2003 manual, the 2004 revision continued to provide that the VA would concede that certain veterans who served in areas along the Korean DMZ when the herbicides were applied—between April 1968 to July 1969—were exposed to herbicides for purposes of their personal claims for benefits connected to such exposure. J.A. 74.

## C. Proposed 38 C.F.R. § 3.307(a)(6)(iv)

In 2009, the VA published a proposed rule in the Federal Register to amend its regulations to incorporate relevant provisions of the Veterans Benefits Act of 2003. Herbicide Exposure and Veterans with Covered Service in Korea, 74 Fed. Reg. 36,640 (proposed July 24, 2009) (to be codified at 38 C.F.R. pt. 3). The VA explained that 38 U.S.C. § 1821 "authorizes recognition of herbicide exposure for 'certain Korean service veterans' for purposes of providing benefits to a child born to them with spina bifida." *Id.* at 36,641. Based on information received from DoD, the VA proposed to "presume herbicide exposure for any veteran who served between April 1968 and July 1969 in a unit determined by VA and DoD to have operated in an area in or near the Korean DMZ in which herbicides were applied." *Id.* The VA also proposed that, if a veteran "served in or near the Korean DMZ during the period between September 1, 1967, and August 31, 1971, but not within the time periods and geographic locations that would qualify for a presumption of exposure under

this proposed rule, such service would qualify for benefits under 38 U.S.C. § 1821 only if VA determines that the veteran was actually exposed to herbicides during such service." *Id*. at 36,642.

In the notice of proposed rulemaking, the VA explained that there "is currently no specific statutory authority for providing a presumption of exposure to herbicide agents to veterans who served in Korea." *Id*. Although the Veterans Benefits Act of 2003 is silent with respect to creating a presumption for the veterans themselves, as distinct from their children, the VA stated that it would be "illogical to conclude that the children with spina bifida of the covered veterans have the disability due to the veteran's exposure to herbicide agents, but not to presume that the veteran himself was exposed to herbicide agents and merits VA benefits for any disabilities associated with that exposure." *Id*. The VA found that "such a presumption would comport with known facts and congressional intent and is within VA's general rulemaking authority under 38 U.S.C. 501." *Id*.

### D. Final 38 C.F.R. § 3.307(a)(6)(iv)

After receiving comments regarding the proposed rules, the VA published a final rule notice on January 25, 2011, extending the time period in which herbicide exposure is presumed from April 1, 1968 to July 31, 1969 to April 1, 1968 to August 31, 1971. Herbicide Exposure and Veterans with Covered Service in Korea, 76 Fed. Reg. 4245, 4245-46 (Jan. 25, 2011). In adopting this change, the VA explained that "it is reasonable and consistent with the intent of Congress to concede exposure for veterans who served in or near the Korean DMZ after herbicide application ceased, because of the potential for exposure to residuals of herbicides applied in that area." *Id*. at 4245 (citing 149 Cong. Rec. H11705-01 (2003) (noting that "it is appropriate to extend the qualifying service period beyond 1969 to account for residual exposure"), *see also*

149 Cong. Rec. S15133-01 (2003)).  Accordingly, the VA revised 38 C.F.R. § 3.307(a)(6)(iv) "to presume herbicide exposure for veterans who served in or near the Korean DMZ between April 1, 1968, the earliest date of potential exposure indicated by DoD, and August 31, 1971, the date identified by Congress" in the Veterans Benefits Act of 2003 as a reasonable outside date for residual exposure. *Id.* at 4246.

The final rule was effective February 24, 2011, and made applicable "to all applications for benefits that are received by VA on or after February 24, 2011 and to all applications for benefits that were pending before VA, the United States Court of Appeals for Veterans Claims, or the United States Court of Appeals for the Federal Circuit on February 24, 2011." *Id.* at 4245.

### E.  McKinney's Claim for Benefits

Petitioner Michael McKinney filed a claim in 2010 for service connection based on exposure to Agent Orange during his service along the DMZ, which began in August 1969.  The VA Regional Office ("RO") denied his claim based on the applicable VBA manual rule, which established a presumption of exposure to Agent Orange for those who served in the DMZ between April 1, 1968 to July 31, 1969.  Notably, that period of presumed exposure expired one month prior to McKinney's service in the DMZ.  While McKinney's claim was still pending, the VA finalized the 2011 regulation, which extended the presumed exposure period to and including August 31, 1971.

In March 2012, the RO granted McKinney's 2010 claim for service connection pursuant to the 2011 regulation, but denied him an effective date earlier than the regulation's February 24, 2011 effective date.  *McKinney v. Shinseki*, No. 12-3639, 2013 WL 2902799, at *1 (Vet. App. June 14, 2013).  As a result, McKinney received benefits for the post-2011 portion of his claim based on the 2011 regulation's presumption of exposure, but was

denied pre-2011 benefits based on a lack of evidence of service connection. Petitioners' Br. 11.

In December 2012, McKinney filed with the United States Court of Appeals for Veterans Claims ("Veterans Court") a "petition for an order to eliminate the inequity in the law that would permit the Secretary to avoid applying a favorable precedential decision in *Mallory v. Shinseki*, No. 11-0401, to the claims of petitioner and other similarly situated claimants." *McKinney*, 2013 WL 2902799, at *1. *Mallory* was an action then-pending before the Veterans Court.[1] The Veterans Court dis-

---

[1] In *Mallory*, the veteran alleged that he had three conditions due to herbicide exposure in the Korean DMZ, but was denied benefits under the VBA manual rule because his service took place outside the period of presumed exposure. *See Mallory v. Shinseki*, No. 11-401-E, 2014 WL 4231304, at *1 (Vet. App. Aug. 27, 2014). After the 2011 regulation went into effect, Mallory filed a brief arguing that the manual rule "relied upon by the Board in denying [his] claims should be set aside as arbitrary, capricious, and contrary to law and the Board's reliance upon that provision deprived him of due process." *Id.* In July 2013, the parties entered into a settlement agreement which awarded Mallory service connection based on the date of his various claims. A footnote in the settlement agreement stated that, "[n]otwithstanding the absence of any binding precedential effect of this agreement," the VA anticipated that, "should there be similarly situated appeals to the [Veterans Court], those Appellants would receive similar treatment." J.A. 86 n.2. Despite this footnote, the text of the settlement agreement stated that "[b]oth parties agree that this settlement is based on the unique facts of this case and in no way should be interpreted as binding precedent for the disposition of future cases." J.A. 86.

missed McKinney's petition for lack of jurisdiction based on his lack of standing. *Id.* at *3 (finding that McKinney's petition did not "seek to remedy a past injury," but rather sought "to prevent a potential injury that may arise if (1) this Court in *Mallory* issues a precedential decision that would entitle him to an earlier effective date for VA benefits, and (2) his claim becomes finally adjudicated before that decision issues"). McKinney appealed to this court, but filed a motion to voluntarily dismiss his appeal, which this court granted in November 2013. Order, *McKinney v. Shinseki*, No. 13-7141 (Fed. Cir. Nov. 5, 2013), ECF No. 11.

## F. Petition for Rulemaking

On January 28, 2014, Petitioners sent a letter to the Secretary of the VA requesting that he change the effective date of the 2011 regulation from February 24, 2011 to November 1, 2004, the date of the 2004 revision to the VBA Manual. J.A. 32. Petitioners also requested that the VA stay the regulation's effective date as to nonfinal claims of affected veterans. Although Petitioners recognized that the 2011 regulation's expansion of the "presumptive exposure window was a welcome rule change," they argued that it was "arbitrary and capricious for the DVA not to apply the same presumption to all timely filed claims for benefits." J.A. 34.

In a letter dated July 10, 2014, the VA construed Petitioners' letter as a petition for rulemaking under 5 U.S.C. § 553(e), and denied Petitioners' request to revise the 2011 regulation's effective date. J.A. 8. In that letter, the Acting VA General Counsel explained that the "2011 amendment to section 3.307(a)(6) was a liberalizing substantive rule, which established a presumption of herbicide exposure not required by any statute." *Id.* The VA further stated that the effective date selected was consistent with its "usual and longstanding practice [which] is to make such substantive rules effective pro-

spectively from the date that is thirty days after the date of their publication in the Federal Register," and that this approach "ensures that all new liberalizing regulations are applied in a fair, consistent, and efficient manner." *Id.*

Next, the VA indicated that the 2011 regulation's February 24, 2011 effective date is consistent with 38 U.S.C. § 5110(g), which provides, in part, that "where compensation . . . is awarded or increased pursuant to any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act or administrative issue." J.A. 11. The VA further explained that retroactivity is not favored in the law, and agencies have limited authority to issue retroactive regulations. Indeed, the VA promulgated § 3.307(a)(6)(iv) pursuant to 38 U.S.C. § 501(a)—which provides the Secretary of Veterans Affairs the authority to prescribe all "necessary" and "appropriate" rules to carry out the laws administered by the VA—and nothing contained therein expressly authorizes retroactive regulations. J.A. 12.

Finally, the VA noted that assigning the 2011 regulation an earlier effective date could give rise to administrative burdens and confusion in adjudicating claims. For example, a retroactive effective date might make it difficult for adjudicators assessing the finality of a claim to determine which regulations were in effect at the time of the prior decision. J.A. 14. For these reasons, the VA declined to change the 2011 regulation's effective date.[2] Petitioners timely petitioned this court for review.

---

[2] With respect to the language in the settlement agreement in the *Mallory* case, the VA disagreed with Petitioners' argument that "[v]eterans falling under the

DISCUSSION

This case arises under our original jurisdiction pursuant to 38 U.S.C. § 502, which provides that:

> An action of the Secretary to which section 552(a)(1) or 553 of this title 5 (or both) refers is subject to judicial review. Such review shall be in accordance with chapter 7 of title 5 and may be sought only in the United States Court of Appeals for the Federal Circuit.

38 U.S.C. § 502. Under this statute, we have jurisdiction to review "the VA's procedural and substantive rules, any amendments to those rules, and the process in which those rules are made or amended." *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 688 (Fed. Cir. 2000) ("*DAV*").

We review petitions under § 502 in accordance with the standard set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. *See Nyeholt v. Sec'y of Veterans Affairs*, 298 F.3d 1350, 1355 (Fed. Cir. 2002) (citing *DAV*, 234 F.3d at 691). The APA requires a reviewing court to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. The court will "hold

---

same exposure window as Mallory should be granted similar relief from the 2004 manual rule." J.A. 14. Although the settlement agreement noted that the VA anticipated "similarly situated appeals" would receive "similar treatment," the VA explained that the meaning of the phrase "similar treatment" in the footnote is ambiguous, and the text of the agreement made clear that it was based on the "unique facts of this case." *Id.* As such, the VA found nothing in the settlement agreement supporting Petitioners' request for an earlier effective date for the 2011 regulation.

unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Mortg. Investors Corp. v. Gober*, 220 F.3d 1375, 1378 (Fed. Cir. 2000). "This review is 'highly deferential' to the actions of the agency." *DAV*, 234 F.3d at 691 (citing *LeFevre v. Sec'y, Dep't of Veterans Affairs*, 66 F.3d 1191, 1199 (Fed. Cir. 1995)).

On appeal, Petitioners argue that the 2011 regulation's effective date is arbitrary and capricious and contrary to law. According to Petitioners, the regulation's effective date: (1) is inconsistent with the VA's obligations under the "basic entitlement" statute—38 U.S.C. § 1110—because it denies veterans mandatory benefits for service-connected injuries; and (2) irrationally creates the potential for two conflicting evidentiary standards to apply to a single pending claim.

As to the first point, Petitioners argue that, under § 1110, the VA is obligated to compensate veterans once it has determined that a veteran has a service-connected disability, but the 2011 regulation's effective date precludes compensation prior to February 24, 2011 for Korean DMZ veterans who cannot prove actual exposure to herbicides, do not satisfy the service requirements in the 2003 manual rule, and filed claims before that date. Petitioners' Br. 24-25. As to the second point, Petitioners argue that the February 24, 2011 effective date leads to the VA's application of two different standards for the same veteran based on the same service: "[o]n the one hand, the [VA] will determine that a veteran is not entitled to compensation for pre-2011 benefits because he failed to prove herbicide exposure," while "[o]n the other, the [VA] will find that the same veteran is entitled to post-2011 benefits because under the 2011 regulation exposure is presumed." Petitioners' Br. 30-31. According to Petitioners, "no law requires this result." *Id*. at 31.

While these arguments are not without some force, the scope of our review under the "arbitrary and capricious" standard is narrow, and "a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). That said, "the agency must examine the relevant data and articulate a satisfactory explanation for its action." *Id*. A regulation is not arbitrary or capricious if there is a "rational connection between the facts found and the choice made." *Id*. (citation and quotation marks omitted); *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 669 F.3d 1340, 1348 (Fed. Cir. 2012).

Applying this highly deferential standard of review, we conclude that the VA adequately explained the facts and policy matters underlying its denial of Petitioners' request for rulemaking to change the effective date of the 2011 regulation. In responding to Petitioners' request for rulemaking, the VA explained that "[r]etroactivity is not favored in the law" and thus "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." J.A. 11-12 (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (quotation marks omitted)). Further, "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Bowen*, 488 U.S. at 208.

It is well established that "'the standard for finding such unambiguous direction is a demanding one.'" *Bernklau v. Principi*, 291 F.3d 795, 805 (Fed. Cir. 2002) (quoting *INS v. St. Cyr*, 533 U.S. 289, 316 (2001)). For example, in *Liesegang v. Secretary of Veterans Affairs*, 312 F.3d 1368 (Fed. Cir. 2002), we explained that "settled and binding precedent preclude[d] us from giving retroactive effect to the regulation" at issue, which created a presumption of service connection for Vietnam veterans who

developed type-2 diabetes. *Id.* at 1377, n.1. In *Liesegang,* we found that 38 U.S.C. § 1116, which authorized the regulation at issue, did not contain "express and unambiguous permission" for VA to issue a retroactive regulation. *Id.*

In its letter denying Petitioners' request for rulemaking, the VA explained that it issued the 2011 regulation pursuant to 38 U.S.C. § 501(a), which provides the Secretary with the ability to prescribe all "necessary" and "appropriate" rules to carry out the laws administered by the VA, including "regulations with respect to the nature and extent of proof and evidence and the method of taking and furnishing them in order to establish the right to benefits under such laws." 38 U.S.C. § 501(a)(1). As the VA explained, that statute provides no express and unambiguous permission to issue retroactive regulations. The VA further indicated that, "[a]lthough there may be exceptional circumstances in which it may be appropriate to assign a retroactive effective date to a particular regulation, it would be inappropriate and inconsistent with section 5110(g) to do so as a routine matter."[3] J.A. 12. Therefore, despite Petitioners' suggestion to the contrary,

---

[3]    Section 5110(g) provides, in part, that:

where compensation . . . is awarded or increased pursuant to any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act or administrative issue. In no event shall such award or increase be retroactive for more than one year from the date of application therefor or the date of administrative determination of entitlement, whichever is earlier.

38 U.S.C. § 5110(g).

the VA did not state that "its hands were tied on the effective date by section 5110(g)." Petitioners' Br. 20. Instead, the VA concluded that it was not appropriate to assign a retroactive date "as a routine matter," and that there was no basis for doing so here.

As the government points out, moreover, the issue before us is not whether the VA *could* have assigned a retroactive effective date to the 2011 regulation, but rather, whether the VA acted arbitrarily and capriciously in assigning a prospective date. In its letter denying Petitioners' request for rulemaking, the VA explained that assigning a retroactive effective date "would potentially create administrative concerns affecting VA's ability to adjudicate claims in a fair, consistent, and efficient manner." J.A. 13. The VA further indicated that "it would be unfair for VA to assign a retroactive effective date to the 2011 regulation . . . while not similarly assigning a retroactive effective date to other regulations VA issues that establish entitlement to benefits for other groups of Veterans." *Id.* And, because assigning a retroactive effective date would be contrary to the VA's standard practice, "it would create potential confusion among both claimants and adjudicators, increasing the complexity of adjudications and the potential for errors and inconsistent results." *Id.* There is nothing arbitrary or capricious in that analysis.

As noted, Petitioners argue that the VA's assignment of a prospective effective date contravenes 38 U.S.C. § 1110, which authorizes the VA to provide compensation to veterans for service-connected disability.[4] But § 1110

---

[4]    Section 1110 provides, in part:

For disability resulting from personal injury suffered or disease contracted in line of duty . . . in the active military, naval, or air service, during a

does not address the effective date for an award of compensation, and Petitioners cite no statutory authority *requiring* the VA to assign retroactive effective dates to its regulations. Finally, we agree with the government that the 2011 regulation's effective date is not arbitrary or capricious simply because it may require application of different standards for different time periods. Indeed, the text of § 5110(g) itself makes clear that, if an award is based on a liberalizing statute or regulation issued while the claim was pending, the effective date of the award "shall not be earlier than the effective date of the Act or administrative issue." 38 U.S.C. § 5110(g). And, we find nothing inherently arbitrary or capricious about "applying intervening changes in law to different time periods covered by a scheme of benefits payable on an ongoing monthly basis." Respondent's Br. 37.

To the extent Petitioners imply that the VA failed to comply with at least the spirit of the *Mallory* settlement, that is not a complaint we can address. While the VA's explanation for its failure to treat other claimants as it did Mr. Mallory is less than persuasive, the VA is correct that its agreement in *Mallory* contained some room for non-compliance in a given case. And, to the extent the VA arguably has breached that settlement agreement, it is Mr. Mallory who would have standing to allege such a breach, and who would be required to establish injury flowing therefrom.

---

period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter . . . .

38 U.S.C. § 1110.

While we, individually or collectively, may have chosen this regulation as one deserving of retroactive treatment, that is not the question before us. We have carefully considered all of Petitioners' arguments and find that Petitioners have failed to show that the VA acted arbitrarily or capriciously in assigning the 2011 regulation a prospective effective date.[5]

CONCLUSION

For the foregoing reasons, we conclude that the effective date of 38 C.F.R. § 3.307(a)(6)(iv) is not arbitrary, capricious, or in violation of law. We therefore deny this petition for review.

**DENIED**

---

[5] Petitioners contend that, "[f]or the same reasons the 2011 regulation's effective date is arbitrary and capricious under 5 U.S.C. § 706(2)(A), it also violates veterans' Fifth Amendment rights." Petitioners' Br. 37. Petitioners present no additional arguments regarding their constitutional claims. Given our conclusion that the regulation's effective date is not arbitrary and capricious, we find the Petitioners' constitutional arguments without merit.